# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DAVID N. POTTER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:07CV00011 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY**, | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

David N. Potter filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2008). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff protectively filed for DIB on March 18, 2005, alleging disability beginning August 2, 2003, due to impairments of the back and knee, high blood pressure, diabetes, and difficulties breathing. (R. at 47-50, 56.) This claim was denied initially on June 17, 2005 (R. at 24-28), and upon reconsideration on September 12, 2005 (R. at 30-32). At his request, the plaintiff received a hearing before an administrative law judge ("ALJ") on March 17, 2006. (R. at 154-191.) The plaintiff, who was present and represented by counsel, testified at this hearing. (*Id.*) By decision dated April 27, 2006, the ALJ denied the plaintiff's claim for DIB. (R. at 17-21.)

The plaintiff filed a request for review of the ALJ's decision with the Social Security Administration's Appeals Council ("Appeals Council"), but on December 22, 2006, the Appeals Council denied the plaintiff's request for review. (R. at 6-9.) Thus, the ALJ's opinion dated April 27, 2006, constituted the final decision of the Commissioner. The plaintiff then filed his Complaint with this court on February 16, 2007, objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty-nine years old at the time of the ALJ's decision, making him a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(c) (2007). He completed high school and has held numerous positions in the coal mining industry over a period of twenty-three years, including supervisory roles as an owner-operator. (R. at 57-58, 61, 63-70, 183-87.) He claims disability due to degenerative arthritis of the lumbar spine and the knees, diabetes mellitus, hypertension and hypothroidism. (R. at 159).

While the plaintiff claims disability beginning August 2, 2003, the medical evidence reveals that he did not seek medical attention for over eight months. From April 26, 2004, to November 28, 2005, the plaintiff was under the care of Dr. Kamran Rasul, M.D., initially seeing him on a monthly basis, then only at three-month intervals. (R. at 124-40, 148-52.) As noted by the ALJ, Dr. Rasul's treatment records "document diabetes mellitus, hypertension, hypothyroidism, degenerative arthritis, and gastritis, but handwritten progress notes contain few legible clinical findings to support the impact of those conditions." (R. at 18.) During visits, the plaintiff related chest pain accompanying exertion and pain in the abdomen and right knee. (R. at 148-49.) Dr. Rasul noted that the plaintiff had a regular heart rate and rhythm and a normal EKG. (R. at 148.) X rays of the chest and knee showed no acute abnormalities and the plaintiff's blood pressure improved over the course of being treated by Dr. Rasul. (R. at 148-49, 151-52.) Dr. Rasul imposed no work-related limitations on the plaintiff. (R. at 124-40, 148-52.)

The plaintiff also saw Dr. Waleed Siddigi, M.D., on March 30, 2005, and complained of pain in both knees, which was partially relieved by Motrin, and a cough, but no fever or shortness of breath. (R. at 113-14.) Dr. Siddigi diagnosed the plaintiff with acute bronchitis, degenerative arthritis, diabetes mellitus, and hypertension, but noted that he could not rule out a ligamentous tear in the right leg.

(R. at 114.) He also noted that the plaintiff refused additional diagnostics for rheumatoid arthritis, including X rays, an MRI, and a blood test. (*Id.*)

The plaintiff was evaluated by Dr. Mahammas R. Javed, M.D., at the request of the Disability Determination Services. (R. at 115-23.) The plaintiff reported constant aching pain in the knee joints, flare-ups of back pain, and pain in the right shoulder joint during movement. (R. at 118.) Dr. Javed noted that the plaintiff had a normal range of motion in all joints except the right shoulder and that X rays were normal. (R. at 119.) In his report, Dr. Javed opined that the plaintiff most likely had early degenerative arthritis of the knees, lumbar spine, and right shoulder. (*Id.*). The plaintiff also reported difficulty breathing, but Dr. Javed found nothing unusual during a physical examination of the lungs or while reviewing a chest X ray. (R. at 118-19.) Dr. Javed also concluded that the plaintiff's hypertension was well controlled by medication and his diabetes was controlled by diet alone. (R. at 119.)

Based on his observations, Dr. Javed completed a Medical Assessment of Ability to do Work-Related Activities (Physical). (R. at 115-17.) He noted that the plaintiff was limited to carrying twenty pounds occasionally and ten pounds frequently, and to stooping, kneeling, crouching, and crawling only occasionally, but had no limitations in standing, walking, or sitting during an eight-hour day. (R. at 115-16.) Dr. Javed noted no other physical limitations, but opined that the plaintiff

was restricted in his ability to work around chemicals, dust, fumes, and humidity. (R. at 116-17.) He also noted that the plaintiff could be expected to miss about one day of work per month due to his impairments. (R. at 117.)

The medical records and notes of these doctors were reviewed by two state agency physicians, Richard M. Surrusco, M.D., and Shirish Shahane, M.D. (R. at 141-47.) Dr. Surrusco summarized the findings of these other doctors in his report and completed the Physical Residual Functional Capacity Assessment, both of which were affirmed by Dr. Shahane. (*Id.*) He opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently, but had no limitations in his ability to stand, walk or sit. (R. at 142.) He further stated that the plaintiff had a limited ability to push or pull with his upper extremities due to his right shoulder and a limited ability to reach. (R. at 142-43.) Unlike, Dr. Javed he noted no postural limitations (including the ability to stoop, kneel, crouch, or crawl) and no environmental limitations (including exposure to chemicals, dust, fumes, or humidity). (R. at 143-44.) The plaintiff correctly states that Dr. Surrusco seemed to misunderstand Dr. Javed's assessment of the plaintiff's postural limitations, interpreting Dr. Javed's opinion to be that the plaintiff could stoop, kneel, crouch, and crawl often, instead of merely occasionally. (Br. Supp. Pl.'s Mot. Summ. J. 6; *see* R. at 116, 147).

-6-

Case 2:07-cv-00011-JPJ-PMS   Document 12   Filed 06/05/08   Page 6 of 14   Pageid#: 51

The evidence in this case also consists of the plaintiff's testimony regarding his subjective claims and his activities of daily living. He related constant pain in the back, shoulders, and knees, an inability to stand for more than twenty-five minutes or walk more than one block without resting, and the need to lie down for three hours a day to relieve pain. (R. at 162-63, 173-74, 176.) However, he takes no prescription medication to relieve pain and sees Dr. Rasul only every three months. (R. at 175-76.) He reports that he prepares meals, cleans the house, reads, uses a computer, attends church, and sometimes assists his parents by getting their mail or prescriptions and performing other small tasks. (R. at 167-171, 176-77.)

Following the plaintiff's testimony, a vocational expert testified regarding the plaintiff's past work experience. When asked by the ALJ to classify the plaintiff's past work, the vocational expert classified the plaintiff's past positions in coal mining as skilled or semi-skilled, ranging from light to very heavy exertion levels.

The ALJ next asked the vocational expert about jobs available for a hypothetical individual of the same age, experience, background and residual functional capacity as the plaintiff. The ALJ described the residual functional capacity as the full range of light work, but with limitations on pushing or pulling with the right upper extremity. (R. at 187-88.) The vocational expert stated that this hypothetical individual could be hired as a mine supervisor, a mine superintendent, a fire boss, or

Case 2:07-cv-00011-JPJ-PMS   Document 12   Filed 06/05/08   Page 7 of 14   Pageid#: 52

a mine dispatcher, which would amount to approximately 8000 jobs nationally. (R. at 188-89.) Outside of the coal mining industry, the vocational expert testified that such an individual could work as a general office clerk, a file clerk, a watch or gate guard, or a retail sales clerk. (R. at 189.) The vocational expert stated that there were 15,680 general office clerks regionally and 329, 280 nationally; 10,780 file clerks regionally and 145,040 nationally; 17,640 watch or gate guards regionally and 294,000 nationally; and 5,440 retail sales clerks regionally and 164,640 nationally. (*Id.*)

The plaintiff's attorney then asked the vocational expert whether that hypothetical individual could perform these jobs if his pain required him to spend several hours out of an eight hour day lying down. (R. at 190.) The vocational expert opined an individual with that limitation would not be able to keep any of the jobs he has previously mentioned. (*Id.*)

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423 (d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing DIB and SSI claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2007). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The fourth and fifth steps in this inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2007). The plaintiff challenges the ALJ's assessment of his residual functional capacity and the ALJ's determination that this residual functional capacity does not preclude him from performing other work in the national economy. (Br. Supp. Pl.'s Mot. Summ. J. 5, 7.)

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotations omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays*, 907 F.2d at 1456.

The plaintiff first complains that the ALJ erred by failing to include all the limitations identified by Dr. Javed in her residual functional capacity determination and by not fully explaining why she chose to not to include these limitations. (Br. Supp. Pl.'s Mot. Summ. J. 5-7.) The ALJ found that the plaintiff had the residual capacity to frequently lift and carry up to ten pounds, with occasional lifting and carrying of twenty pounds, and to sit, stand, or walk as required throughout an eight-hour work day. (R. at 20.) She further found that this capacity to perform work at a

-10-

Case 2:07-cv-00011-JPJ-PMS   Document 12   Filed 06/05/08   Page 10 of 14   Pageid#: 55

light level of exertion was limited by an inability to perform work requiring "more than limited reaching, pushing, or pulling with the right upper extremity." (*Id.*) Finally, she concluded that the plaintiff's diabetes mellitus, hypertension, and gastritis added no additional work-related limitations. (*Id.*) The specific limitations the ALJ did not include in her assessment of the plaintiff's residual functional capacity are the inability to stoop, kneel, crouch, or crawl more than occasionally (postural limitations) and restrictions on the ability to work around chemicals, dust, fumes, and humidity (environmental limitations).

The ALJ considered all the evidence in the record including the physicians' clinical findings, the extremely conservative treatment given the plaintiff, and the wide range of daily activities reported by the plaintiff in reaching her decision and ultimately did give "great weight" to Dr. Javed's opinion. (R. at 19.) While she did not accept his opinion in its entirety, her residual functional capacity determination is largely consistent with his assessment of the plaintiff's abilities.

The portions of Dr. Javed's opinion not incorporated by the ALJ are those that are not supported by the rest of the evidence of record. Dr. Javed described the plaintiff as having respiratory impairments that prohibit exposure to humidity or environmental irritants, but all clinical findings pertaining to these alleged respiratory impairments were normal. The ALJ noted that Dr. Javed's examination of the plaintiff

-11-

revealed clear lungs and no cardiac abnormalities, and similar examinations conducted by the other physicians also yielded normal results. (R. at 18.) Dr. Javed's opinion respecting the plaintiff's respiratory impairment was not based on clinical or diagnostic evidence, but instead on the plaintiff's subjective complaints. As such, the ALJ was not required to adopt the environmental limitations suggested by Dr. Javed. *See* 20 C.F.R. § 404.1527(d)(3) (2007) (explaining that the amount of weight to be given a physician's opinion depends on how well it is supported by the objective medical evidence of record); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (stating that a physician's opinion based only on subjective complaints is entitled to less weight).

Similarly, Dr. Javed described the plaintiff as being able to stoop, kneel, crouch, or crawl only occasionally, despite there being no clinical or diagnostic evidence to support that diagnosis. Range of motion testing and X rays conducted by Dr. Javed and other physicians found no abnormalities or limitations with respect to the plaintiff's back or knees. (R. at 18-19.) In fact, Dr. Javed noted that the plaintiff's range of motion was entirely normal, with the exception of his right shoulder. (R. at 119). In addition to being unsupported by any clinical or diagnostic evidence, the postural impairments suggested by Dr. Javed are not supported by the plaintiff's treatment history. The medical evidence shows that the plaintiff has never required

-12-

prescription pain medication, physical therapy, surgery, or pain management for his back or knees, instead requiring only over-the-counter pain medication. (R. at 18-19.) Because the evidence of record does not support the postural and environmental limitations suggested by Dr. Javed, the ALJ did not err by not including these in her determination of the plaintiff's residual functional capacity. I find that the ALJ's residual functional capacity determination is supported by substantial evidence.

Because the ALJ did not err in assessing the plaintiff's residual functional capacity, the plaintiff's second argument—that the ALJ's residual functional capacity determination tainted her evaluation of the plaintiff's ability to perform other work in the national economy (Br. Supp. Pl.'s Mot. Summ. J. 7-8)—must fail.[1] I find that the ALJ's determination that the plaintiff retains the capacity to perform other work in the national economy is supported by substantial evidence. I will consequently deny the plaintiff's request to reverse or, alternatively, to remand.

---

[1] Had I found that the ALJ's determination of the plaintiff's residual functional capacity was not supported by substantial evidence because it did not include the limitations raised by Dr. Javed, remand would still be unnecessary. When questioned about types of work that could be performed by an individual with the same residual functional capacity as the plaintiff, the vocational expert cited the positions of general office clerk, file clerk, and watch or gate guard, and positions in retail sales, all light work. (R. at 189.) Even if a person has the ability to stoop, kneel, crouch, or crawl only occasionally, they retain the ability to perform most jobs at the light exertion level. Soc. Sec. R. ("SSR") 85-15, 1985 WL 56857, *7; SSR 83-14, 1983 WL 31254, *2, 4. The same is true if a person is restricted in his exposure to environmental irritants, as this would "not significantly affect the potential unskilled light occupational base." SSR 83-14, 1983 WL 31254, *5.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: June 5, 2008

/s/ JAMES P. JONES
Chief United States District Judge